CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JAN 31 2017
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JOHNNY E. BECKNER, )
      Plaintiff, ) Civil Action No. 7:16CV00307
)
v. ) **MEMORANDUM OPINION**
)
NANCY BERRYHILL, Acting )
Commissioner of Social Security,[1] ) By:  Hon. Glen E. Conrad
)      Chief United States District Judge
      Defendant. )

    Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

    The plaintiff, Johnny E. Beckner, was born on January 11, 1961, and eventually completed the eighth grade in school. Later in life, Mr. Beckner earned a GED. Plaintiff worked for many years for a paving company, as a crew leader, heavy equipment operator, and foreman. He last worked on a regular and sustained basis in 2007. On February 17, 2012, Mr. Beckner filed an application for a period of disability and disability insurance benefits. On April 3, 2012, plaintiff filed an application

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. See Social Security Act § 205(g), 42 U.S.C. § 405(g).

for supplemental security income benefits. Earlier applications for disability insurance benefits and supplemental security income benefits had proven unsuccessful. In filing his second and current set of claims, Mr. Beckner alleged that he became disabled for all forms of substantial gainful employment on April 27, 2010, due to heart problems, chest pain, chronic obstructive pulmonary disease, diverticulitis, depression, neck pain, carpal tunnel syndrome, bilateral shoulder pain, tremors in hands, and anxiety. Mr. Beckner now maintains that he has remained disabled to the present time. As to his application for disability insurance benefits, the record reveals that plaintiff met the insured status requirements of the Act through the second quarter of 2012, but not thereafter. See gen., 42 U.S.C. §§ 416(i) and 423(a). Consequently, Mr. Beckner is entitled to disability insurance benefits only if he has established that he became disabled for all forms of substantial gainful employment on or before June 30, 2012. See gen., 42 U.S.C. § 423(a).

Mr. Beckner's claims were denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated April 20, 2015, the Law Judge also determined that plaintiff is not disabled. The Law Judge found that Mr. Beckner suffers from several severe impairments, including coronary artery disease, status post stenting; asthma; chronic obstructive pulmonary disease; peripheral neuropathy; and bipolar mood disorder. (TR 55). Given such a combination of impairments, the Law Judge ruled that Mr. Beckner is disabled for his past relevant work at the paving company. However, the Law Judge determined that plaintiff retains sufficient functional capacity to perform a limited range of light exertion. The Law Judge assessed Mr. Beckner's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), in that he is able to lift/carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk about 6 hours each

2

during an 8-hour workday; but is limited to no more than occasional overhead reaching; no ladder/rope/scaffold climbing; and performing other postural activities, such as bending and stooping, on an occasional basis. The claimant also must avoid concentrated exposure to hazards, like unprotected heights or dangerous moving machinery, as well as temperature extremes, fumes, odors, dust, gases, and poor ventilation, and he is limited to no frequent foot controls. Any work should involve no significant public contact.

(TR 60). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge found that Mr. Beckner retains sufficient functional capacity to perform several specific light work roles existing in significant number in the national economy. (TR 75-76). Accordingly, the Law Judge ultimately concluded that Mr. Beckner is not disabled, and that he is not entitled to benefits under either federal program. (TR 76). See gen., 20 C.F.R. §§ 404.1520(g) and 416.920(g).

Mr. Beckner appealed the Law Judge's decision to the Social Security Administration's Appeals Council. Shortly after he filed his appeal, plaintiff submitted a number of new medical reports documenting treating for his physical symptoms, and establishing a new, neurological diagnosis. However, the Appeals Council eventually adopted the Law Judge's opinion as the final decision of the Commissioner. Having now exhausted all available administrative remedies, Mr. Beckner has appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of

3

physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record of this case, the court must conclude that there is substantial evidence to support the Commissioner's denial of plaintiff's claim for disability insurance benefits. Mr. Beckner has a history of treatment for chest pain, chronic obstructive pulmonary disease, musculoskeletal complaints, and bipolar disorder. Plaintiff has a history of myocardial infarction, and has undergone stent placement to relieve coronary artery disease. Mr. Beckner has a history of musculoskeletal complaints, though there was no objective evidence of mechanical defect during the period in which he enjoyed insured status. As for his chronic obstructive pulmonary disease, ventilatory studies have produced unremarkable results. Although plaintiff's doctors have treated him for anxiety, stress, and bipolar symptoms, Mr. Beckner has not received regular treatment from a mental health specialist. His doctors consider his emotional symptoms to be largely controlled through pharmaceutical means.

The court believes that the Commissioner reasonably relied on a consultative report from Dr. William C. Humphries in concluding that Mr. Beckner retained the capacity to perform light exertional activity, at least during the period in which he still enjoyed insured status. Dr. Humphries examined plaintiff on July 18, 2013. Dr. Humphries noted that plaintiff experienced two myocardial infarctions in 2007, and that he continues to experience occasional chest pain relieved with nitroglycerin. (TR 781). Dr. Humphries reported that plaintiff's breathing problems are also controlled with medication. (TR 781). The consultant confirmed a history of musculoskeletal pain,

4

especially in the neck and low back. (TR 781). Dr. Humphries noted mild limitation of motion in the shoulders and ankles. Dr. Humphries listed Mr. Beckner's diagnoses as follows:

1. Obesity.
2. Chronic cervicothoracic lumbar strain.
3. Chronic obstructive pulmonary disease mild.
4. Coronary artery disease by history status post myocardial with atypical chest pain.
5. Degenerative joint disease mild both knees and hands.
6. Carpal tunnel syndrome bilateral mild.
7. Familial tremor, mild.
8. Peripheral neuropathy both lower extremities probably related to remote ethanol ingestion.

(TR 783). The consultant went on to offer the following assessment as to plaintiff's functional capacity:

> Based on objective findings of this evaluation, the examinee will be limited to sitting 6 hours in an 8-hour day, to standing and walking 6 hours in an 8-hour day, lifting 50 pounds occasionally and 20 pounds frequently. He will be limited to occasional climbing, kneeling and crawling. There will be no restriction regarding stooping or crouching. He should avoid heights, hazards and fumes. He would not be able to perform frequent foot controls.

(TR 783-84).

In short, the court believes that there is substantial evidence to support the Commissioner's determination that Mr. Beckner was not disabled for all forms of work when he was seen by Dr. Humphries in 2013. It follows that the Commissioner reasonably determined that plaintiff was not disabled for all forms of work at any time during the period prior to termination of insured status on June 30, 2012. The medical record compiled during this earlier period of time does not document any physical condition that could reasonably be expected to produce totally disabling pain and subjective discomfort. Moreover, while Mr. Beckner had some emotional symptoms, there is simply no indication that his problems were so intractable or

5

Case 7:16-cv-00307-GEC   Document 16   Filed 01/31/17   Page 5 of 11   Pageid#: 1234

severe as to prevent performance of lighter levels of work activity. It follows that the Commissioner's final decision denying plaintiff's claim for disability insurance benefits must be affirmed.

Plaintiff's claim for supplemental security income benefits presents somewhat different issues. The medical record confirms that Mr. Beckner continued to seek treatment for pain throughout his body. During his testimony at the administrative hearing on February 24, 2015, plaintiff related that he has difficulty performing normal activities, such as taking a bath or showers because of his physical discomfort. (TR 96). He stated that he finds it necessary to lie down and rest throughout the course of a normal day. (TR 97). Plaintiff testified that his pain is most severe in his shoulders and low back, (TR 99), and that he also experiences significant discomfort in his legs, ankles, and feet. (TR 99-100). He described numbness in his extremities. (TR 101). Notably, Mr. Beckner stated that while his discomfort is constant, "it flares up to different degrees of pain." (TR 100). The court agrees that, if plaintiff's testimony is fully credited, it is unlikely that Mr. Beckner would be unable to engage in light exertional work activity on a regular and sustained basis.

The Administrative Law Judge concluded that plaintiff's testimony, and his complaints of disabling subjective discomfort, could not be fully credited. (TR 70). The Law Judge noted that plaintiff's complaints of debilitating physical symptoms were out of proportion to the objective medical evidence. (TR 70-72). The Law Judge observed as follows:

> In sum, the undersigned finds that claimant's allegations of debility are inconsistent with the limited abnormalities throughout his physical exams, his positive response to conservative treatment of medications and inhalers, and his significant gaps in treatment.

(TR 72).

As previously noted, in appealing the Law Judge's decision to the Appeals Council, Mr. Beckner submitted new medical evidence. The new evidence consists of reports from medical treatment at the Carilion Clinic Roanoke Memorial Hospital on several occasions in 2015. The new evidence indicates that Mr. Beckner suffered a new cardiovascular episode in September of 2015. Perhaps more importantly, it seems that, earlier in 2015, Mr. Beckner again sought treatment at the medical facility for pain management. Based on plaintiff's complaints of generalized pain syndrome, generalized weakness, and joint pain, and in the absence of objective evidence of neuropathy, Mr. Beckner's neurologist ordered an EMG. (TR 1071). The EMG resulted in findings of Charcot-Marie-Tooth disease.[2] (TR 1100, 1102).

The court believes that the evidence submitted to the Appeals Council belies the Law Judge's opinion in several respects. First, contrary to the Law Judge's assertion, it does seem that Mr. Beckner has continued to seek medical treatment for management of severe and debilitating pain. More importantly, in the absence of any objective findings of musculoskeletal dysfunction, a consulting neurologist ordered an EMG study, which confirmed the presence of a neurological disorder which could reasonably be expected to result in polyarthralgia. Yet, in adopting the Law Judge's opinion as the final decision of the Commissioner, the Appeals Council limited its assessment of the new evidence to the following statement:

> We also looked at medical records from Carilion Clinic, dated July 16, 2015 (6 pages); medical records Roanoke Memorial Hospital, dated September 23, 2015

---

[2] Charcot-Marie-Tooth disease is defined as a group of hereditary conditions characterized by chronic motor and sensory polyneuropathy, of variable inheritance and including autosomal dominant, autosomal recessive, and X-linked forms. It is characterized by progressive symmetric distal muscle weakness and atrophy starting in the feet and legs, gait disturbance, and absent stretch reflexes. Dorland's Illustrated Medical Dictionary (32nd ed. 2012).

7

to September 24, 2015 (19 pages); and correspondence from Virginia Department of Social Services, dated February 17, 2016 (6 pages). The Administrative Law Judge decided your case through April 20, 2015. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before April 20, 2015.

(TR 5).

Assuming that the new medical reports submitted directly to the Appeals Council are best characterized as new evidence, the court believes that plaintiff has established "good cause" for remand of his case to the Commissioner for further consideration of his claim for supplemental security income benefits. In Borders v. Heckler, 777 F.2d 954 (4th Cir. 1985), the United States Court of Appeals for the Fourth Circuit summarized the standards under which a motion for remand based on new evidence must be considered:

> A reviewing court may remand a Social Security case to the Secretary on the basis of newly discovered evidence if four prerequisites are met. The evidence must be "relevant to the determination of disability at the time the application was first filed and not merely cumulative." Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983). It must be material to the extent that the Secretary's decision "might reasonably have been different" had the new evidence been before her. King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Sims v. Harris, 631 F.2d 26, 28 (4th Cir. 1980). There must be good cause for the claimant's failure to submit the evidence when the claim was before the Secretary, 42 U.S.C. § 405(g), and the claimant must present to the remanding court "at least a general showing of the nature" of the new evidence. King, 599 F.2d at 599.

777 F.2d at 955.

In the instant case, the new medical evidence was received by the Appeals Council. Clearly, there is no question as to the nature of the evidence. Moreover, given the facts that the new evidence was obviously generated in the course of continuing treatment, and that the reports were forwarded to the Appeals Council, there can be no concern as to any failure to submit the evidence while the claim was before the Commissioner. Without question, the new medical

8

reports relate to pain management issues which were directly considered by the Law Judge in his opinion.

As to the remaining element in the Borders test, the court believes that consideration of the new reports might reasonably result in a different administrative disposition in Mr. Beckner's supplemental security income case.[3] As noted above, in finding that plaintiff is not disabled, the Administrative Law Judge explicitly relied on the absence of objective findings which could be expected to explain plaintiff's complaints of disabling pain and weakness. It is well settled that in order for pain to be held disabling, there must be objective medical evidence establishing some condition that could reasonably be expected to produce the pain alleged. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996); Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986). Clearly, if plaintiff is suffering from Charcot-Marie-Tooth disease, this rare neurological disorder could be expected to cause subjective manifestations such as were described by Mr. Beckner in his testimony given in 2015. The new medical evidence seemingly undercuts reasons given by the Administrative Law Judge for the denial of plaintiff's claim for disability based on pain and subjective discomfort. In short, given the current state of the medical record in plaintiff's case, it appears that there are unresolved factual questions which should be committed to the fact finder in the first instance. Upon consideration of the Borders factors, the court concludes that plaintiff has established "good cause" for remand of his case to the Commissioner for further and more detailed consideration of the new medical evidence.

---

[3] In the absence of any evidence indicating that plaintiff's neurological symptoms, or his neurological disease, had reached a disabling level of severity prior to termination of insured status, the court concludes that it simply cannot be said that plaintiff has met the burden of establishing disability for purposes of his claim for disability insurance benefits, even with consideration of the new reports.

9

The court recognizes that the new submissions might arguably fall into a somewhat different category, inasmuch as the reports were first provided to the Appeals Council, and were actually referenced by the Appeals Council in its denial of plaintiff's request for review. The court notes that the United States Court of Appeals for the Fourth Circuit was presented with a similar factual and procedural scenario in Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011). In that case, the Court made the following comments as to the assessment to be given to evidence submitted to the Appeals Council for its consideration in determining whether to review the opinion of an Administrative Law Judge:

> On consideration of the record as a whole, we simply cannot determine whether substantial evidence supports the ALJ's denial of benefits here. The ALJ emphasized that the record before it lacked "restrictions placed on the claimant by a treating physician," suggesting that this evidentiary gap played a role in its decision. Meyer subsequently obtained this missing evidence from his treating physician. That evidence corroborates the opinion of Dr. Weissglass, which the ALJ had rejected. But other record evidence credited by the ALJ conflicts with the new evidence. The Appeals Council made the new evidence part of the record but summarily denied review of the ALJ decision. Thus, no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record. Assessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance. Therefore, we must remand the case for further fact finding.

662 F.3d at 707.

In the instant case, the court believes that the new evidence arguably fills the "evidentiary gap" between plaintiff's physical complaints and the objective medical evidence. The court believes that the Commissioner is properly placed to consider the probative value of such evidence.

10

In summary, for the reasons stated, the court finds that the Commissioner's final decision denying plaintiff's application for disability insurance benefits is supported by substantial evidence. Simply stated, there is no evidence which suggests that plaintiff's condition on and before June 30, 2012 was any different than considered by the Administrative Law Judge.[4] Accordingly, the final decision of the Commissioner as regards this application for benefits must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). As to that portion of the case dealing with plaintiff's application for supplemental security income benefits, the court has found "good cause" for remand of the case to the Commissioner for consideration of new medical evidence. Upon remand, if the Commissioner is unable to decide this remaining claim in plaintiff's favor based on the existing record, the Commissioner shall conduct a supplemental administrative hearing at which both sides will be allowed to present additional evidence and argument. An appropriate judgment and order will be entered this day.

The clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 31st day of January, 2017.

_____
Chief United States District Judge

---

[4] Stated differently, there is no evidence that plaintiff's Charcot-Marie-Tooth disease had reached a disabling level of severity during this earlier period of time.

11